**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KIANA JONES,

  *Plaintiff - Appellant*,

v.

STARZ ENTERTAINMENT, LLC,

  *Defendant - Appellee.*

No. 24-1645

D.C. No.
5:24-cv-00206-
KK-DTB

OPINION

Appeal from the United States District Court
for the Central District of California
Kenly Kiya Kato, District Judge, Presiding

Argued and Submitted December 4, 2024
Pasadena, California

Filed February 28, 2025

Before: Ronald M. Gould, Richard R. Clifton, and Gabriel
P. Sanchez, Circuit Judges.

Opinion by Judge Clifton

## SUMMARY[*]

### Arbitration

The panel affirmed the district court's decision denying Kiana Jones's petition under the Federal Arbitration Act to compel individual arbitration against Starz Entertainment, LLC, a video streaming provider, pursuant to the Starz Terms of Use.

Jones, along with thousands of other claimants represented by the same law firm, initiated dispute-resolution proceedings against Starz, alleging violations of federal and state privacy laws. The arbitration provider, Judicial Arbitration and Mediation Services, or JAMS, ordered consolidation of these filings to be presided over by a single arbitrator.

The panel held that Jones was not a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate," as required by 9 U.S.C. § 4, because Starz never failed, neglected, or refused to arbitrate. Distinguishing *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670 (9th Cir. 2024), the panel held that an arbitration provider's consolidation of numerous identical filings pursuant to its own rules as incorporated by the parties' agreement, as opposed to class or representative arbitration, did not present a gateway question of arbitrability for the courts to address.

The panel held that the Federal Arbitration Act did not allow Jones, as the party seeking arbitration, to raise the

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

argument that the Terms of Use were unconscionable to the extent that they allowed pre-arbitration consolidation by JAMS.

## COUNSEL

Kiran N. Bhat (argued), Keller Postman LLC, Coral Gables, Florida; Nicole Berg and Patrick A. Huber, Keller Postman LLC, Chicago, Illinois; Warren D. Postman and Albert Y. Pak, Keller Postman LLC, Washington, D.C.; Jae K. Kim, Lynch Carpenter LLP, Pasadena, California; for Plaintiff-Appellant.

Jeffrey E. Tsai (argued), DLA Piper LLP, San Francisco, California; Angela C. Agrusa, DLA Piper LLP, Los Angeles, California; David Horniak, DLA Piper LLP, Washington, D.C.; for Defendant-Appellee.

Robert E. Dunn, Collin J. Vierra, and Isaac J. Weitzhandler, Eimer Stahl LLP, Campbell, California; Jonathan D. Urick, United States Chamber Litigation Center, Washington, D.C.; for Amicus Curiae the Chamber of Commerce of the United States of America.

# OPINION

CLIFTON, Circuit Judge:

Plaintiff-Appellant Kiana Jones appeals the district court's denial of her motion to compel arbitration against Defendant-Appellee, Starz Entertainment, LLC ("Starz"). Jones, along with thousands of other claimants represented by the same law firm, initiated dispute-resolution proceedings against Starz pursuant to the Starz Terms of Use ("Terms"), alleging violations of federal and state privacy laws. The arbitration provider designated by the Terms, Judicial Arbitration and Mediation Services ("JAMS"), ordered consolidation of these filings to be presided over by a single arbitrator. The arbitration has since remained stalled in an apparent procedural stalemate, after a substantial number of the claimants repeatedly disqualified arbitrators appointed by JAMS. Jones petitioned the district court to compel individual arbitration. The district court denied the petition, holding that Jones was not "aggrieved" within the meaning of the Federal Arbitration Act ("FAA") and that the court's limited role did not extend to the procedural issue of consolidation.

The FAA provides that a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate" may petition a federal district court to compel arbitration. 9 U.S.C. § 4. Jones contends that she was "aggrieved" by the consolidation of arbitration filings because it amounted to Starz's refusal to engage in an individual, bilateral arbitration as, she argues, is required by the Terms. In the alternative, Jones argues that the Terms are unconscionable to the extent that they allow pre-arbitration consolidation. Jones requests that we use authority under § 4 to excise the

allegedly unconscionable provision and compel arbitration in accordance with such modified terms.

We affirm the decision of the district court. We agree with the district court that Starz has not failed, neglected, or refused to arbitrate and that the alternative requests presented by Jones are not justified or authorized under FAA § 4.

## I. Background and Procedural History

Starz is a media and entertainment company that offers an online video streaming service. Jones created a Starz account and used the Starz platform to stream video content. By signing up for this service, she agreed to Starz's Terms of Use, which contained a mandatory arbitration clause: "All controversies, disputes or claims arising out of or relating to these Terms of Use will be determined pursuant to the mediation and arbitration procedures of JAMS . . . in accordance with the comprehensive rules and procedures . . . of JAMS ('JAMS Rules'), as modified by these Terms of Use." The Terms further stated: "You and Starz agree that each may bring claims against the other only in your or its individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding."

Jones initiated the dispute-resolution process in January 2023 by submitting a Demand for Arbitration Form to JAMS, alleging that Starz violated the Video Privacy Protection Act and California Civil Code § 1799.3 by disclosing her identity and the videos she watched to third-party companies like Meta and Google. Jones's arbitration demand was one of 100,978 identical demands, all submitted by Keller Postman LLC ("Keller"), the law firm representing Jones. Four months later, Keller wrote to JAMS requesting

individual mediation on behalf of 7,300 clients including Jones, in compliance with the Terms' requirement that the parties endeavor to resolve controversies through JAMS-administered mediation prior to commencing arbitration. The mediation reached an impasse due to the parties' disagreement about how to allocate mediation fees.

Keller subsequently sought to initiate 7,300 individual arbitrations, including one for Jones, to resolve that disagreement as well as the underlying dispute concerning Starz's alleged data breach. Each arbitration requires a filing fee of $2,000, with the arbitration-initiating consumer party's payment capped at $250 by the JAMS Consumer Minimum Standards. This arrangement of 7,300 separate arbitrations would have resulted in charges to Starz totaling $12,775,000 ($1,750 multiplied by 7,300 filings) in initiation fees alone.

JAMS, acting through its National Arbitration Committee, requested briefs from the parties on whether the "matters should be consolidated pursuant to JAMS Comprehensive Rule 6(e)." JAMS Rule 6(e) provides: "Unless the Parties' Agreement or applicable law provides otherwise, JAMS, if it determines that the Arbitrations so filed have common issues of fact or law, may consolidate Arbitrations . . . ." Starz favored consolidation, and Jones and the other claimants represented by the Keller firm did not. After receiving the parties' respective positions, JAMS consolidated the 7,300 filings in order to enable efficient and timely adjudication. JAMS clarified in the same notice that the claimants would retain their state statutory right to disqualify the appointed arbitrator. *See* Cal. Civ. Proc. Code § 1281.91(b)(1).

JAMS appointed the Honorable Gail Andler[1] as the arbitrator after the parties went through the standard striking-and-ranking process. Fifteen days later, Keller sent a single email to JAMS serving notices of disqualification on behalf of 7,213 claimants, not including Jones. JAMS treated the notices as disqualifying Judge Andler as to the entire consolidated proceeding. This process repeated itself each time JAMS appointed an arbitrator, preventing the arbitration from going forward. At no point did Starz disqualify an appointed arbitrator.

JAMS then suggested that Keller petition the California Superior Court to appoint an arbitrator. That route would appear to prevent repeated sequential disqualifications. Relevant state law grants a party a single peremptory challenge against a court-appointed arbitrator, after which a subsequent appointee can be disqualified only upon a showing of cause. Cal. Civ. Proc. Code § 1281.91(b)(2). Jones and her counsel have not taken this path to obtain appointment of an arbitrator by the Superior Court.

Instead, Jones petitioned the district court to compel arbitration under § 4 of the FAA. The district court denied the petition, holding that Jones "failed to demonstrate she is an 'aggrieved' party" within the meaning of § 4. The district court further held that JAMS's consolidation did not present a gateway question of arbitrability for the court to decide. Jones timely appealed.

## II. Discussion

We review de novo the denial of a motion to compel arbitration. *Holley-Gallegly v. TA Operating, LLC*, 74 F.4th

---

[1] Judge Andler retired from the Orange County Superior Court after 22 years of service and became a JAMS neutral in 2017.

997, 1000 (9th Cir. 2023). We review for clear error any factual findings underlying the district court's order. *Id.* Jones claims that she is a party aggrieved within the meaning of the FAA due to Starz's failure to engage in individual arbitration with her. According to Jones, the mass consolidation generated an endless procedural loop in which any one of the thousands of claimants could exercise the statutory right to disqualify the appointed arbitrator as to the entire proceeding, thus depriving her of the individual arbitration allegedly mandated by the Terms. Jones also argues in the alternative that the Terms are unconscionable under California law to the extent that they permit pre-arbitration consolidation.

We conclude that Jones is not aggrieved under the statute because Starz never failed, neglected, or refused to arbitrate. An arbitration provider's consolidation of numerous identical filings pursuant to its own rules as incorporated by the parties' agreement does not present a gateway question of arbitrability demanding our attention. We do not reach the issue of unconscionability because the FAA does not allow Jones to raise that argument as the party seeking arbitration.

### A.  Failure, Neglect, or Refusal to Arbitrate

Section 4 of the FAA provides: "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. By its plain terms, the provision conditions a district court's authority to compel arbitration upon a showing that a party has failed, neglected, or refused to arbitrate. *See Cmty. State Bank v. Strong*, 651 F.3d 1241, 1256 (11th Cir. 2011) ("FAA § 4 is only triggered when one

party has expressed a 'refusal' to arbitrate, and the other party has been thereby 'aggrieved.'" (quoting 9 U.S.C. § 4)). A petition under § 4 is frequently brought as a response to the opposing party's attempt to initiate litigation in court or as a preemptive motion where the other party has expressed a failure, neglect, or refusal to arbitrate. *See, e.g.*, *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1027 (9th Cir. 2022) (petition brought by defendant in response to plaintiff's complaint in federal court); *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021) (petition brought by defendant in response to putative class action); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1129 (9th Cir. 2000) (petition brought by plaintiff after defendant refused to arbitrate); *cf. Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1194 (9th Cir. 2024) ("If a party ignores its agreement to arbitrate, the other party may ask a court to issue [an order compelling arbitration under § 4].").

The district court held that Jones failed to demonstrate she is "aggrieved" within the meaning of § 4 because she alleged no facts giving rise to any inference that Starz failed, neglected, or refused to arbitrate. The district court noted Jones's own admission in her petition that "JAMS commenced arbitration proceedings as to roughly 7,300 pending arbitration demands," as well as the parties' interactions throughout the arbitration process, such as the striking and ranking of arbitrators. The district court further concluded that JAMS's decision to consolidate 7,300 identical demands sharing common issues of fact or law did not constitute a refusal on Starz's part.

We agree. Jones's opening brief does not point to any conduct by Starz that triggers § 4. To the contrary, the record reflects that Starz has engaged in the arbitration process at

every step of the way. In response to Keller's request for mediation, Starz expressed that it was "ready and willing to begin mediating," even as it disagreed with Keller's demand that each claimant's mediation fee be capped at $250 (a demand that JAMS later rejected). Starz complied with JAMS's request for the parties to submit their positions on consolidation. The parties do not dispute that Starz paid its initiation fee for the consolidated proceeding, participated in the selection of arbitrators, and remains ready and willing to proceed with the consolidated proceeding.

Jones's position appears to boil down to the assertion that by urging JAMS to consolidate these claims and attempting to participate in the consolidated proceeding, Starz refused to arbitrate individually with Jones as mandated by the Terms. But it was JAMS, not Starz, that made the decision to consolidate, so it is not clear how that decision can be characterized as a refusal by Starz to arbitrate.

More broadly, the premise of Jones's argument is incorrect. The Terms do not, on their face, preclude consolidation of the 7,300 arbitrations demanded by Jones and the other claimants represented by Keller. The Terms, as noted above, state that: "You and Starz agree that each may bring claims against the other only in your or its individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding." The argument that the Terms' prohibition of "class or representative proceeding" precludes consolidation has no merit.

The Terms never used the phrase "individual arbitration" or expressly prohibited consolidation. *See, e.g.*, *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 683 (9th Cir. 2024) (noting that arbitration clause specifically required

resolution of claims by "individual arbitration"). Rather than prohibit consolidation, the agreement between Starz and Jones plainly contemplated its possibility by incorporating the JAMS Rules, including the Rule that authorizes JAMS to consolidate filings that share common issues of fact or law.

Consolidation is not the same as class or representative arbitration.[2] Some similarities exist in that both procedures encompass multiple disputes and heighten the commercial stakes. There is a critical difference, however. In a class or representative arbitration, an individual brings claims *on behalf of* others, whereas a claimant in a consolidated arbitration brings the claim in her *individual* capacity. It is that representative feature, not the mere numerosity of parties, that forms the critical element of the "fundamental changes brought about by the shift from bilateral arbitration to class-action arbitration." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 686 (2010). The Supreme Court cautioned that "a proceeding in which two and only two parties arbitrate exclusively in their individual capacities is not the only thing one might mean by 'bilateral arbitration,'" explaining that the problems "identified in mandatory class arbitration arise from procedures characteristic of multiparty representative actions." *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 657–58 (2022); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 348 (2011) ("Classwide arbitration includes absent parties, necessitating additional and different procedures and involving higher stakes."). Those procedures pertain to the

---

[2] Jones admitted as much during oral argument, stating that "it is technically 7,300 separate, individual bilateral arbitrations even as a consolidated proceeding."

special risks posed by the binding effect of a resolution upon absent class members, who must be afforded sufficient notice, opportunity to be heard, and adequate representation by the lead parties. *See id.* at 348–49. The consolidation here implicates none of those concerns: no claimant is at the mercy of another claimant's representation of her.

Our recent decision in *Heckman* offers helpful contrast. That case concerned novel arbitration procedures used by New Era ADR ("New Era"). *Heckman*, 120 F.4th at 676–80. We held the arbitration agreement substantively unconscionable based on, among other reasons, serious misgivings about New Era's use of bellwether cases in its mass arbitration protocol. *Id.* at 684–85. There, after New Era compiled similar cases into a batch, three bellwether cases were selected to serve as precedents for all cases in the same batch. *Id.* at 678. Claimants in non-bellwether cases had no right to participate in the bellwether cases, no access to the bellwether decision until it was invoked against them, no notice of the bellwether cases, no opportunity to be heard, and no right to opt out of the batch. *Id.* at 684. In short, New Era's protocol contained all the red flags associated with classwide arbitration.

Had JAMS's consolidation in this case shared even some of those defects, we may have been more sympathetic to Jones's complaint that she was denied the kind of arbitration she signed up for. The reality is that she agreed to an arbitration that permits consolidation and got what she agreed to.

Indeed, from a practical standpoint, we are unconvinced that Jones is aggrieved at all. Contrary to her grievance that she is being prevented from a hearing on the merits of her claim, there remain avenues of relief available to Jones.

First, to the extent Jones believes that the consolidation violated her contractual right to individual arbitration, she can make that argument to the arbitrator selected to preside over the consolidated proceeding. That arbitrator presumably has the authority to revisit the National Arbitration Committee's consolidation order. JAMS Rule 11(a) plainly allows that path: "Once appointed, the Arbitrator shall resolve disputes about the interpretation and applicability of these Rules and conduct of the Arbitration Hearing." The letter from JAMS requesting briefs on the question of consolidation said as much, stating that objections could be raised to the arbitrator upon appointment.

Second, to the extent Jones claims injury from the repeated disqualification of arbitrators, there is a solution available to her: she can petition a California Superior Court to appoint an arbitrator, as suggested by JAMS. The California Code of Civil Procedure grants a party a single peremptory challenge against a court-appointed arbitrator and requires any subsequent disqualification to be based upon a showing of cause. Cal. Civ. Proc. Code § 1281.91(b)(2).[3] No cause has been suggested in any of the

---

[3] The provision states in full: "A party shall have the right to disqualify one court-appointed arbitrator without cause in any single arbitration, and may petition the court to disqualify a subsequent appointee only upon a showing of cause." Jones could of course argue that this language should be read as granting each of the thousands of claimants an unconditional right to disqualify, in which case the route to the Superior Court would not offer meaningful relief from the present procedural delay. It is unclear in practice whether the Superior Court would tolerate 7,300 peremptory challenges before requiring a showing of cause. Such a reading also creates tension with other sections of the Code that

disqualification statements to date, and absent a showing of cause, an arbitrator will be selected through a court-appointed process. There is thus a limit to the delay that can be caused by disqualifying arbitrators. Had Jones genuinely wanted to obtain a resolution on the merits, she could have availed herself of the California Superior Court.

The fact that Jones has not pursued this path casts serious doubt over the true motivation underlying the mass-arbitration tactic deployed here, which appears to be geared more toward racking up procedural costs to the point of forcing Starz to capitulate to a settlement than proving the allegations of data breach to seek appropriate redress on the merits. We appreciate that claimants in some circumstances may feel disfavored by arbitration clauses included within form contracts. The Terms in this instance are clear, however, and arbitration is available to resolve the claims asserted by Jones and others.

## B.  Gateway Question of Arbitrability

Unable to make the threshold showing required under § 4, Jones attempts to shift the focus by arguing that the district court abandoned its responsibility to address a gateway question of delegation. Jones takes issue with the fact that the consolidation order came from the JAMS National Arbitration Committee, which she characterizes as

---

authorize consolidation and describe the court-appointment process as a final backstop where parties fail to agree on an arbitrator. *See* Cal. Civ. Proc. Code §§ 1281.3, 1281.6. In any case, Jones is free to make this argument before the state court—which is better positioned to address the underlying state-law questions—and again to the appointed arbitrator.

"JAMS administrators," rather than an appointed arbitrator.[4] The order was based on JAMS Rule 6(e), which authorizes JAMS to consolidate filings that share common issues of fact or law "[u]nless the Parties' Agreement or applicable law provides otherwise." Jones would interpret that dependent clause as requiring an arbitrator to decide consolidation whenever an ostensible contractual dispute arises. Because the Terms incorporate JAMS rules, the Terms delegate the authority to consolidate not to an administrator but to an arbitrator, and therefore, Jones argues, the district court had a duty to intervene.

It strains credulity to believe that it is the business of a federal court to second-guess an independent arbitration provider's application of its own rule—a rule incorporated into the parties' agreement—to consolidate thousands of identical arbitration demands. As Jones's counsel acknowledged during oral argument, no court would tolerate having to try 7,300 identical cases separately. No arbitration provider should have to, either.

Jones's argument about the district court's responsibility is a non sequitur, because she cannot circumvent the problem

---

[4] The JAMS National Arbitration Committee is itself composed of arbitrators from the JAMS roster, so in one sense, Jones's distinction between arbitrators and administrators is exaggerated. In any case, it is inescapable that JAMS would have to make certain procedural decisions prior to the selection of an arbitrator, not least because the Terms incorporated the JAMS Rules. Rule 1(c) states: "The authority and duties of JAMS as prescribed in the Agreement of the Parties and in these Rules shall be carried out by the JAMS National Arbitration Committee ('NAC') . . . ." Rule 6 outlines several pre-arbitration administrative decisions that JAMS can make. Rule 11(a) conditions an arbitrator's authority to resolve disputes about the JAMS Rules on the arbitrator's being appointed, implying that at least some JAMS rules can be applied and effectuated prior to such appointment.

of demonstrating Starz's refusal to arbitrate. Our "limited" role under the FAA no doubt encompasses adjudicating gateway questions of arbitrability. *Chiron*, 207 F.3d at 1130. These questions usually concern the validity and scope of the agreement to arbitrate. *Id.* Our need to address such gateway questions, however, stems in the first place from the parties' disagreement about whether to arbitrate at all. The question of validity arises when one party characterizes the arbitration agreement as invalid; the question of scope arises when one party denies that the arbitration agreement covers the controversy at issue.

*Shivkov v. Artex Risk Solutions, Inc.*, 974 F.3d 1051 (9th Cir. 2020), illustrates this point. The defendants in that case were insurance management companies that moved to compel arbitration in response to a class action brought by plaintiffs who had retained the defendants' services to manage captive insurance companies. *Id.* at 1056–58. After concluding that the arbitration agreements were enforceable, we went on to hold that the availability of class arbitration is presumptively a gateway issue for judicial determination. *Id.* at 1065–66. We explained why the question of class arbitration implicates validity and scope, the dual cores of arbitrability. As for validity, class arbitration "raises the question whether any of those possible class members have actually agreed to arbitration in the first place." *Id.* at 1066. Similarly, "the question whether [defendants] agreed to arbitrate particular disputes not only with the Plaintiffs, but also with possible class members," presents the "familiar gateway question of scope." *Id.*

By contrast, nobody here is denying that Starz's Terms contain a valid arbitration agreement or that the agreement covers the dispute at issue. Jones may be dissatisfied with JAMS's interpretation of its own rules, but the JAMS Rules

are what she agreed to and she can seek recourse within those Rules. We cannot be made to do the bidding of every unhappy arbitration claimant, and especially not one who is already in arbitration. Jones's invocation of the courts' responsibility under the FAA rings hollow where the circumstances simply present no dispute about arbitrability. We therefore need not reach the question of whom the Terms authorized to order consolidation as between an arbitrator or an administrator.

## C. Unconscionability

Jones argues in the alternative that if the Terms permit pre-arbitration consolidation, they are unconscionable. She then requests that we sever the unconscionable provision—the Terms' incorporation of JAMS Rule 6(e)—and enforce the remainder of the arbitration agreement, meaning compel Starz to arbitrate one-on-one with Jones and 7,300 other claimants.

We are aware of no precedent where the party petitioning to compel arbitration under FAA § 4 simultaneously characterizes as unconscionable the same arbitration agreement that the petitioner seeks to enforce. Jones makes the novel request that we use unconscionability doctrine to chisel an arbitration agreement into a version that suits her preferred contractual interpretations and then order the other party to comply with those modified terms. This we cannot do.

Statutory text dictates the outcome here. Section 4 authorizes a district court to issue an "order directing the parties to proceed to arbitration *in accordance with the terms of the agreement*." 9 U.S.C. § 4 (emphasis added). For the purposes of the unconscionability argument, Jones assumes that the Terms apply. Those Terms authorize consolidation.

By her own assumption, then, the only remedy Jones can seek is arbitration that allows consolidation—which she already is in.

This is not a mere technicality. Selectively enforcing an arbitration agreement while nullifying its key provision by fiat of judicial power contravenes the "fundamental principle that arbitration is a matter of contract." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010); *see Stolt-Nielson*, 559 U.S. at 684 ("[A]rbitration is a matter of consent."). It is true that FAA § 2 includes a saving clause that allows arbitration agreements to be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court thus held that generally applicable contract defenses such as unconscionability can invalidate agreements to arbitrate themselves. *Concepcion*, 563 U.S. at 339. But Jones is not raising unconscionability as a defense here. Contrary to her characterization, *Concepcion* never said that courts can modify the terms of an arbitration agreement at the request of the enforcing party. A vast reservoir of precedents illustrates the commonsensical posture in which unconscionability is always invoked by the party seeking to avoid enforcement. *See, e.g.*, *Heckman*, 120 F.4th at 676, 680–83. *Concepcion* simply imposed a limiting principle upon the consent-based regime of arbitration for the same unremarkable reasons that contract law would occasionally permit a judicial decree to function as a backstop to the parties' consent.

Jones may not turn the shield of unconscionability into a sword to compel a type of arbitration that Starz never agreed to. We cannot entertain her unprecedented request, and accordingly, we decline to reach the issue of unconscionability.

## III.   Conclusion

Jones cannot petition for an order to compel arbitration because she failed to allege that she is aggrieved by Starz's failure, neglect, or refusal to arbitrate. Whether JAMS properly ordered consolidation is not a gateway question of arbitrability fit for judicial determination. FAA § 4 does not permit Jones to use unconscionability to modify the Terms as the party seeking to compel arbitration. We therefore affirm the decision of the district court denying Jones's petition to compel arbitration.

**AFFIRMED.**